JOY HALLGARTH V. DAVID HALLGARTH

NO. 07-01-0013-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

MAY 29, 2001

______________________________

IN RE THE MARRIAGE OF

 

JOY THORNTON HALLGARTH AND DAVID ARNOLD HALLGARTH

_________________________________

FROM THE COUNTY COURT AT LAW NO. 2 OF LUBBOCK COUNTY;

NO. 99-508,290; HON. DRUE FARMER, PRESIDING

_______________________________

Before BOYD, C.J., and QUINN and JOHNSON, JJ.

David Hallgarth appeals from a declaratory judgment wherein the trial court found a common law marriage existed between David Hallgarth (David) and Joy Thornton Hallgarth (Joy).  Through his three points of error, David alleges 1) the evidence was legally insufficient to support a finding of marriage, 2) the evidence was factually insufficient to support a finding of marriage, and 3) the trial court abused its discretion in holding that a common law marriage existed on April 21, 1986.  We affirm.

Background

David and Joy began dating in 1984.  They began living together in 1985 while David was still married to someone else.  He later obtained a divorce in 1987.  Soon thereafter David and Joy decided to have children together.  They represented themselves to be married and wore wedding bands so they could qualify for participation in a fertility program called GIFT.  The GIFT program involved the use of in vitro fertilization.  They participated in GIFT three to six times (the parties’ testimony conflicted as to the exact number of attempts) during the years 1988 to 1990 at a cost of $10,000.00 per attempt.  David and Joy then turned to an egg donor program in which they took part until the year 1992.  Said program also cost them $10,000.00.  Joy then became pregnant, but unfortunately she miscarried on March 21, 1993.  David  and Joy ended their relationship and stopped living together in November 1999.

Analysis

A.  Elements of Common Law Marriage

In Texas, the three elements of a common law marriage require a man and woman to: 1) have an agreement to be married, 2) live together in Texas as husband and wife, after the agreement, and 3) represent to others that they are married.  
Tex. Fam. Code Ann
. § 2.401(a)(2) (Vernon 1998 & Vernon Supp. 2001); 
Russell v. Russell
, 865 S.W.2d 929, 932 (Tex. 1993).  All three elements must co-exist.  
Eris v. 
Phares, 39 S.W.3d 708, 713 (Tex.App.–Houston [1
st
 Dist.] 2001, pet. filed) (citing 
Winfield v. Renfro
, 821 S.W.2d 640, 645 (Tex.App.–Houston [1
st
 Dist.] 1991, writ denied); 
Ballesteros v. Jones
, 985 S.W.2d 485, 489 (Tex.App.–San Antonio 1998, pet. denied).  Moreover, a proponent may prove an agreement to be married by either circumstantial or direct evidence.  
Russell v. Russell
, 865 S.W.2d at 933.  Proof of cohabitation and representations to others may constitute circumstantial evidence of an agreement to be married.  
Id.

B.  Legal Sufficiency

1.  Standard of Review

In reviewing the legal sufficiency of the evidence, we consider only the evidence and inferences that tend to support the fact finder’s findings and disregard all contrary evidence and inferences.  
Wal-Mart Stores v. Gonzalez
, 968 S.W.2d 934, 936 (Tex.1998).  Anything more than a scintilla of evidence is legally sufficient to support a finding.  
See Formosa Plastics Corp. USA v. Presidio Eng’rs and Contractors, Inc.
, 960 S.W.2d 41, 48 (Tex.1998).  More than a scintilla of evidence exists when the evidence supporting the finding rises to a level that would enable reasonable minds to differ in their conclusions.  
See Merrell Dow Pharmaceuticals, Inc. v. Havner
, 953 S.W.2d 706, 711 (Tex.1997).

2.  Application

David contends there was legally insufficient evidence of any agreement to be married.  After a thorough review of the record, we find the following evidence was presented in support of the fact finder’s findings: 1) David and Joy lived together as husband and wife for 15 years, 2) during the Christmas season of 1986, David gave Joy an engagement ring and a wedding ring and “indicated” to her that they were married, 3) from the late 1980s to the early 1990s they participated in fertility programs, 4) they held themselves out to be married when attempting to conceive a child, 5) they registered in hotels as “Mr. and Mrs. Hallgarth”, 6) David once stated that Joy was his wife so she could gain admission into his hospital room, 
see Russell v. Russell
, 865 S.W.2d at 932 (noting that a “‘forthright assertion of marriage with the consequence of liability (as when an alleged spouse seeks admission of the other to a hospital) may, on the other hand be far more probative of a tacit agreement to be married”’), and 7) David was introduced to various third parties as Joy’s husband without any objection on his part.  These findings fulfill the elements of living together and holding themselves out as husband and wife in the state of Texas.

David’s main contention is that the evidence was legally insufficient in showing that an agreement to be married existed.  To establish the element of an agreement to be married, the evidence must show the parties intended to have a present, immediate, and permanent marital relationship and that they did in fact agree to be husband and wife.  
Winfield v. Renfro
, 821 S.W.2d 640, 645 (Tex.App.–Houston [1
st
 Dist.] 1991, writ denied) (citing 
Rodriguez v. Avalos
, 567 S.W.2d 85, 86 (Tex.App.–El Paso 1978, no writ)).  Testimony by one of the parties is considered as direct evidence of the agreement to be married. 
Collora v. Navarro
, 574 S.W.2d 65, 70 (Tex.1978)
; Winfield v. Renfro
, 821 S.W.2d at 645.  Such testimony does not as a matter of law negate an agreement to be married.  
In the Matter of the Estate of Giessel
, 734 S.W.2d 27, 32 (Tex.App.–Houston [1
st
 Dist.] 1987, writ ref’d n.r.e.).  If further evidence of an agreement is necessary, it may be inferred from the cohabitation and representations of the parties.  
Id.
  

In the case at bar, Joy testified that David asked her to marry him in 1986 when they decided to have children together.  According to Joy, her alleged husband also informed her that they were married when he gave her an engagement ring and a wedding ring in December of 1986.  Such testimony constitutes as direct evidence of an agreement to be married.  When to the foregoing we add the evidence concerning their 15 year period of cohabitation, their use of the same last name, their representations to third parties that they were married, and the statement to hospital officials by David that Joy was his wife to gain her admission into the hospital, 
Russell v. Russell
, 
supra
, we conclude that there existed more than a scintilla of evidence that the two agreed to be married.  Thus, we overrule this point of error because there exists legally sufficient evidence to support a finding of common law marriage. 

C.  Factual Sufficiency

1.  Standard of Review

In reviewing a challenge as to the factual sufficiency of the evidence, this Court must evaluate all of the evidence and reverse the judgment only if the finding of the trial court is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust.  
Cain v. Bain
, 709 S.W.2d 175, 176 (Tex.1986).  A trial court, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given to their testimony.  
Lee v. Lee
, 981 S.W.2d 903, 906 (Tex.App.–Houston [1
st
 Dist.] 1998, no pet.).  It is the trier of fact, not the reviewing courts, that has the authority to resolve conflicts in the evidence.  
Pool v. Ford Motor Co.
, 715 S.W.2d 629, 634 (Tex.1986);
 In re T.M.
, 33 S.W.3d 341, 349 (Tex.App.–Amarillo 2000, no pet.).

2.  Application

Under the factual sufficiency review, we must look at all the evidence presented. David and Joy concurred in the fact that they cohabited for 15 years.  Furthermore, David testified he only held himself out as married to Joy on few occasions, i.e. when they were involved in the fertilization programs, when he helped her obtain a loan at the credit union, when he was in the hospital, and when they registered in hotels during their trips.  Moreover, David presented the following evidence to the trial court challenging the element of an agreement to be married: 1) his testimony that he never thought of himself as being married to Joy; 2) he only thought of Joy as his “sweetie” despite living with her for 15 years and paying 90% to 95% of the household utilities; 3) they never filed joint tax returns; 4) Joy stated she was single on the financial aid forms for a student loan application; 5) the real estate property he purchased during the 15 years of their cohabitation was always purchased in his name alone; 6) his testimony that she purchased a set of rings and that he only gave her permission to wear the engagement ring for purposes of the fertilization program they were involved in; 7) his testimony that she opened credit card accounts in his name without his permission; 8) she used his name without his permission; and, 9) the fact that Joy did not change her name to his on both her social security card and driver’s license.

Joy, on the other hand, testified David claimed her as his wife before family, friends, his employees, and the fertility clinic.  She also presented the following evidence: 1) she stated she had to keep her name on her social security card and on her driver’s license because they would not change it to appellant’s surname without a marriage certificate; 2) Joy’s testimony that David told her to use his name and said they were married after giving her the rings; 3) her testimony that he bought the rings they wore to the fertility programs; 4) the fact she carried him as her spouse on the medical insurance provided by her employer; 5) their auto insurance policy listed them both with the name of Hallgarth; 6) the testimony of Joy’s daughter that David once said “he didn’t need a certificate for marriage, that they were married at heart” in reference to his relationship with Joy; 7) Joy and David had a joint bank account under the surname of Hallgarth; 8) Joy’s niece who volunteered to be an egg donor testified she heard David refer to Joy as his wife “around other people” and also during the counseling required for the egg donor program; and 9) Joy’s testimony that she filed income taxes as a single head of household as per David’s instructions.

As can be seen from the evidence set out above, there were various inconsistencies which the trial court had to resolve.  However, because this was a bench trial, the trial court was entitled to resolve those inconsistencies and decide which witnesses to credit.  
Lee v. Lee
, 981 S.W.2d at 906.  And, in resolving those inconsistencies in favor of Joy, the trial court decision was not so against the great weight and preponderance of the evidence as to render it wrong and manifestly unjust.  Thus, we overrule this point of error.

D.  Abuse of Discretion

Through his third point of error, David claims the trial court abused its discretion in holding that a common law marriage existed on April 21, 1986.  To determine whether a trial court abused its discretion, we must decide “whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable.”  
Worford v. Stamper
, 801 S.W.2d 108, 109 (Tex.1990).  As for David’s argument that there was no evidence to support the finding of the existence of a common law marriage, in the discussion set out above, we found there was both legally and factually sufficient evidence for the trial court to so find.  Thus, we will not address that contention again.

However, we will speak to his other argument that the trial court abused its discretion in determining the marriage began on the date of April 21, 1986.  Given this finding, the trial court implicitly concluded that each of the conditions giving rise to a common law marriage had occurred by April 21, 1986.  Yet, both Joy and David testified that David had not divorced his prior wife until April of 
1987
.  Thus, the circumstances creating the common law marriage arose when he was still married to another person.  Authority holds that a marriage contracted while one party is married to another is void.  
Villegas v. Griffin Indus.
, 975 S.W.2d 745, 750 (Tex.App.–Corpus Christi 1998, pet. denied); 
Garduno v. Garduno
, 760 S.W.2d 735, 740-41 (Tex. App.–Corpus Christi 1988, no writ).  Yet, the same authority further states that an informal marriage (such as that at bar) will be recognized as beginning on the date the prior marriage is dissolved.  
Id.
  In other words, if the circumstances creating the common law marriage occur while one party is married to another person, the common law marriage comes to fruition upon dissolution of that marriage.  

As previously mentioned, the only evidence within the record before us illustrates that David did not divorce until April of 1987.  Having not divorced until then, and given that the conditions evincing an informal common law marriage occurred before then, the common law marriage between Joy and David did not legally come into fruition until April of 1987.
(footnote: 1)   So, the trial court abused its discretion in concluding that the two were married as of April, 1986. 

Accordingly, we modify that portion of the judgment declaring that David and Joy Hallgarth were married as of April 26, 1986 to state that they were married as of April 1987 and, as modified, affirm the judgment.

Per Curiam

Do Not Publish.

FOOTNOTES
1:
Our duty, as an appellate court, is to consider only the testimony adduced and the evidence received at the time of hearing and made part of the record.  
See Vanscot Concrete Co. v. Bailey
, 862 S.W.2d 781, 783 (Tex.App.–Fort Worth 1993, writ granted), 
aff’d
, 894 S.W.2d 757 (Tex.1995). Furthermore, attaching documents to an appellate brief does not make them part of the record, and, unless those documents were made part of the record below, we cannot consider them.  
Till v. Thomas, 
10 S.W.3d 730, 734 (Tex. App.–Houston [1
st
 Dist.] 1999, no pet.).  So, because the divorce decree Joy appended to her appellate brief was not offered or received into evidence below or formally made a part of the appellate record, we cannot consider it.