IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 9, 2005 Session

CAROLYN MITCHELL BROWN, BY VAN ALLEN JOHNSON,
CONSERVATOR, v. JOHN HILYEE WATSON, JR.

Direct Appeal from the Chancery Court for Knox County
No. 157555-3       Hon. Darryl R. Fansler, Chancellor

No. E2004-01229-COA-R3-CV  - FILED JULY 5, 2005

The Trial Court annulled Brown's marriage at the insistence of her conservator.  On appeal, we
affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO,
JR., J., and D. MICHAEL SWINEY, J., joined.

Robert W. Weismueller, Jr., Knoxville, Tennessee, for appellant, Carolyn Mitchell Brown.

Ralph E. Harwell, and Tracy Jackson Smith, Knoxville, Tennessee, for appellee, Van Allen Johnson.

Gerald L. Gulley, Jr., Knoxville, Tennessee, for appellee, John Hilyee Watson, Jr.

**OPINION**

        This is the second appeal involving the plaintiff, Carolyn Mitchell Brown by her
conservator,  and defendant, John Hilyee Watson, Jr., but the posture of this appeal is different in
that it involves the annulment of their marriage.

        Ms. Brown's conservator of the person, Van Allen Johnson, filed a Complaint for
Annulment of the marriage, on March 14, 2003, alleging that Ms. Brown and Mr. Watson were
married in Campbell County, Tennessee on December 19, 2002.   The Complaint alleged that Ms.

Brown lacked the mental capacity to enter into a contract of marriage, and that the defendant exerted undue influence upon her, and asked that the marriage be annulled and the parties be restored to their previous rights, both personal and property.

Defendant answered, defending the marriage, and after an evidentiary hearing, the Trial Court entered a Final Judgment on April 7, 2004, incorporating it's Memorandum Opinion, wherein the Court annulled the marriage between Brown and Watson. The Court found that Brown's testimony could be given no weight, and found Watson's testimony not to be credible.

The Court relied on *Hunt v. Hunt*, 412 S.W.2d 7 (Tenn. Ct. App. 1965), for the proposition that marriage "is a civil contract, and may be voided, like any other contract, for want of sufficient mental capacity of the parties. If the mind is unsound at the time, it is incapable of consent, and that is an essential element in all contracts." The Court found that, based on the proof presented and the Court's own observations of Brown, clear and convincing evidence established that Brown lacked the necessary mental capacity to marry.

The Trial Court heard testimony of Ms. Wilson, who the Trial Court found to be very credible. She stated that on the day of the wedding Brown could not answer questions for herself but she seemed nervous and agitated like she did not know what she was doing which caused Wilson enough concern that she would not issue the license without her boss's ok. The Trial Court also heard the testimony of Watson and Nance[1] concerning Brown's abilities on that day, but the Court found that Watson was not a credible witness, and that the weight to be given to Nance's testimony had to be limited, due to his brief interaction with Brown.

More importantly, the Trial Court relied on Dr. Dougherty's expert testimony, wherein he opined that as Brown's treating neurologist, she was unable to understand and appreciate the benefits, obligations and responsibilities of marriage well prior to December, 2002. Dr. Dougherty opined that Brown's condition was steadily deteriorating, and that since he had last seen her she would have had no lucid intervals wherein she would have been able to understand and appreciate the benefits, obligations and responsibilities of marriage. The Trial Court found Dr. Dougherty's opinion to be well reasoned and unbiased and fully accepted the same.

As the Supreme Court has explained, since the trial judge "is in a better position to weigh and evaluate the credibility of the witnesses who testify orally, we give great weight to the trial judge's findings on issues involving credibility of witnesses." *Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997). While appellant would have this Court re-assess the credibility of these witnesses, the record does not establish any basis for this Court to question the credibility of the witnesses as found by the Trial Court.

In this regard, it is argued that we should discount Dr. Dougherty's testimony completely, since he was not present on the day of the marriage to observe Brown's behavior. This

_____

[1]Nance was the clerk who authorized the issuance of the marriage license.

argument ignores the fact that Dr. Dougherty opined that Ms. Brown was significantly impaired when he first saw her in 2000, and that her condition had only deteriorated since that time. Dr. Dougherty further opined that while Brown could certainly have some better days and some worse days, she would never have such a "moment of lucidity" wherein she could have been able to appreciate the benefits, obligations, and responsibilities of marriage during the relevant time frame. Dr. Dougherty was of the firm opinion that Brown could not, in December 2002 or any other time after her degenerative condition was diagnosed, understand the ramifications of entering into a marriage or any other contract. This testimony was unrefuted by any expert testimony.

Moreover, the Trial Court had before it the fact that Brown had already been judged incompetent by the Chancery Court prior to this marriage, such that her ability to enter into contracts or any other act of legal significance had been removed. Collateral estoppel applies. *See, Trinity Industries, Inc. v. McKinnon Bridge Co., Inc.*, 77 S.W.3d 159, 184-185 (Tenn. Ct. App. 2001)(citations omitted). In this case, the issue is precisely the same as that in the conservatorship action, i.e. Brown's mental competency. Accordingly, since Brown had previously been judged incompetent by the Court, appellant would be estopped from relitigating that issue in this case.

Next, it is argued that the Trial Court infringed on Brown's Constitutional right by removing her right to marry and annulling her marriage to Watson. Once again, the fact that appellant ignores is that Brown had already had her right to enter into any binding contract or do any other act of legal significance taken away by virtue of the conservatorship.

It is further argued that this marriage was later ratified, relying on *Hunt v. Hunt*, 412 S.W.2d 7 (Tenn. Ct. App. 1965), which states a marriage can later be ratified by an incompetent person and held valid. This argument ignores the fact that *Hunt* specifically stated that such ratification must take place during lucid intervals. *See also Bryant v. Townsend*, 221 S.W.2d 949 (Tenn. 1949); *Coulter v. Hendricks*, 918 S.W.2d 424 (Tenn. Ct. App. 1995). In this case, the evidence, as found by the Trial Court, was that any supposed ratification was not during any lucid interval. This issue is also without merit.

For the foregoing reasons, we affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to John Hilyee Watson, Jr.

_____
HERSCHEL PICKENS FRANKS, P.J.

-3-